Case number 25-1471, Eric Thomas v. Kim Cargor. Argument is not to exceed 15 minutes per side. Mr. Denna, you may proceed for the appellant. Thank you. Daniel Denna from the Federal Community Defender on behalf of Mr. Eric Thomas, and I am reserving 3 minutes for rebuttal. Very well. May it please the court. This case, at its heart, is about one thing, and it's about enforcing the minimum constitutional requirements for a guilty plea. Mr. Thomas entered a no-contest plea in the mists and the chaos of a trial after a co-defendant flipped and critical pre-trial rulings went against him. At that moment, two things were true. First is that Mr. Thomas believed that he could still appeal those critical trial court rulings. And second, that he believed that the plea did not expose him to a harsher sentence than the 20 to 50 years that the government suggested that they would be seeking if Mr. Thomas had been convicted at trial. Both beliefs were wrong. Was the court required to tell the defendant he had a right to appeal? Normally, if you're entering a guilty plea, I don't think – is there a due process right or any kind of a right to know that you have a right to appeal if you're entering a guilty plea? Well, whether the court should have advised him is sort of a different question than what we're asking the court to find here, which is that really what is undoubtedly clear is that when a defendant like Mr. Thomas has a clear misunderstanding of what rights he is losing at the time of the plea, his counsel certainly has a duty to clear that obvious misunderstanding. And that comes from the general – Well, he was told by the court that he did not have an automatic right of appeal. Correct? That is true. But I think what's important to keep in mind is that, I mean, the – what he was told was that he would not have an automatic right to appeal, but he was told that he could appeal by leave. What does that mean? Appeal by leave is – Did he have a right to be told that he had a right to appeal by leave? I mean, where does that come from? Well, I think the problem is that any way you want to frame that language, it's complete legalese. And to a person, a defendant like Mr. Thomas, I mean, we don't – in reality, what happens when you enter a plea is that you lose all right for those non-jurisdictional issues. And that's what was not made clear to him. And for someone who has demonstrated that his right to appeal was really the path that he was intending to seek, clearing that misunderstanding was critical. So maybe asking Judge Bush's question a different way. So the first time this case was here, we said that EDPA did not clearly establish that he had to knowingly and voluntarily – or to know of this right to appeal in order to enter a knowing and voluntary plea. And so if that's true, because that's what we settled the first time, why would it be clearly established under EDPA that it's ineffective assistance for a lawyer not to convey information that he would not even need to know to enter a knowing and voluntary plea? I guess another way to think about it is I see some symmetry between the affirmative right to knowledge of the appeal claim, which we rejected the last time, and this – putting that claim in the new guise of ineffective assistance. And so if we rejected the first claim, why shouldn't we reject this ineffective assistance claim for the same reasons? Well, because what this comes down to is Mr. Thomas having an actual affirmative misunderstanding about – in order to enter a valid plea. So why should an attorney have the duty to tell him of something assuming he didn't even have to know it to enter a knowing plea? Well, I think I have to just draw from my – at this – I mean I would draw from my own experience as a public defender and say that if I knew that there was a critical aspect of the plea decision-making process that was important to my client, and my client affirmatively made comments on the record showing an obvious misunderstanding of what those rights are, certainly it would be deficient performance if I were to allow him to continue with that plea knowing that he was wrong about something that was critically important to him. I have a question about the standard. Were we on de novo review? I think we may be talking about a different issue or even a different – obviously a different standard, but we're not here on de novo review. And isn't that really part of that concern, that it fails because of the standard that is required under AEDPA? No, because AEDPA requires deference only to reasoned applications of clearly established law. In here, in this case, I mean we don't have any meaningful engagement with the requirements of Strickland or Hildy Lockhart in ensuring that counsel adequately represented Mr. Thomas at the time of the plea given the obvious misunderstanding of the law that was not corrected. May I switch to the other issue? I am interested in the argument that he did not understand what his sentence would be. And in looking back through the transcripts, I wonder if you could point to me what it is the best location in either – we know there's the trial proceedings, then the plea hearing during jury selection, and then ultimately the sentencing hearing. Where in that flow of transcripts shows that he did not understand that life was the penalty, as the maximum penalty? Well, it's not that he didn't understand that life was the maximum penalty, and more that he was not giving – there's no evidence that he was given really any meaningful indication by his counsel as to where in that range of zero months to life that sentence would be. I mean, what we can see on the record is that there was talk about a plea agreement for 8 to 25 years and a possible guideline range of 8 to 20 years, but also – Even a maximum of 50. But also – We would concede that, but your client refused that option, right? That is right, and it was probably reasonable given if he had any – if he believed the state when they were suggesting that the guidelines could be 8 to 20 years in the first place, but he was also given – there was a guideline range of 120 months or 10 to 25 years thrown out. But also the 20 to 50 years thrown out. At this point, if we have no mandatory minimum, I mean it's – saying that the statutory maximum is life gives a defendant no meaningful data about how to assess what he could be facing or what the risks are, and – If your position is correct, it would seem to me counsel has a duty before the plea to calculate the guidelines range in federal court, and that never happens. At the plea, usually the district court will say you recognize that the guidelines range will come later. It could be anything. You won't have a right to withdraw your plea even if you don't like the guidelines range. It seems to me under your position, that would be inappropriate because he wouldn't know his guidelines range. That would be revolutionary in the federal system. Our position is not that we need to be able to guarantee the correct guideline range. It's that counsel has some duty to provide some information about what that guideline range could be because I would respectfully push back and say we – our office, we – every time we counsel a client, we advise – we give them some estimate of the guideline range. We tell them we can't guarantee what that guideline range would be, but of course we give them some meaningful data because this is not like a reentry – an unlawful reentry case where there's only a max penalty of two years, and that's the whole span of what we have to worry about. We're talking about zero to life. Didn't the court explain that to him at the plea hearing before he accepted the plea? I mean, my review of the record is that the court only explained that there was a maximum penalty of life, and there's no indication that counsel ever had relayed anything about the actual sentencing exposure that Mr. Thomas could have been facing. So – and that's a little bit of the struggle here. What is the – what is counsel required to do? Research seems to indicate to me that the requirement is for knowledge of the maximum exposure. Do you have a case that says that what a defendant must be apprised of is his guideline range as well as – or what's your best case for why there is that duty beyond the maximum? Well, you know, I don't think that there is a case that is going to be directly on point as to the question of being advised of a specific sentencing range. But I think the general principles of Strickland and Hilby Lockhart go to the heart of what we're saying, which is that there are some minimum constitutional requirements, and that does include giving the defendant some meaningful information about what they should expect once they plead guilty. I see that my time is up. Thank you, Mr. Dinah. You'll have your rebuttal. Mr. Shimkus. Thank you, Your Honor. Good afternoon. May it please the court. Assistant Attorney General Scott Shimkus appearing for respondent. In the face of DNA and her co-defendant's testimony against him, which was his cousin, Thomas admitted his participation in a gang rape of a young mother in her home bound with duct tape and a gun held to her head as her toddler slumbered in another room. He admitted this in open court over a decade ago, and when given a chance to withdraw his plea before sentencing, he still declined. Yet he wants this court to believe, as he argued to the state courts, that he didn't actually want to plead because he didn't understand two things. One, his appellate rights, and two, his sentencing exposure. The state courts rejected those claims, both of them, on the merits, as did the district court. And for good reason, because whatever path this court follows to review those claims, all roads lead to affirmance. I really have to say, I think I would agree with Mr. Denna here that this case is about minimum constitutional requirements. The problem, though, is that Mr. Thomas doesn't identify any cases that say counsel must talk about the appellate waiver, specifically the waiver of non-jurisdictional defects on appeal. There's no case that says that, that would bind a trial attorney in Michigan and specifically the counsel in this case. And there's no case that says that counsel constitutionally must talk about sentencing exposure beyond the maximum sentence. And in this case, both… Your opposing counsel makes a fair argument for the problem that this is a defendant who says what he wants to do in the future. I'm going to appeal this. I'll take all of these issues up on appeal. And he listed or he had talked about the kinds of issues already that he wanted to bring up. Your opposing counsel suggests that it is the general understanding and the constitutional and case principles that would suggest, when that is obvious on the record, that there is a duty to disabuse his misunderstanding of the rule. Why do you think that that's inaccurate? So I think the problem is because we're talking about very general standards here, there's significant leeway for the state courts to come to different decisions about what counsel must do and what the trial court must do. So Strickland is a very general standard. The Supreme Court has said that time and time again. And the plea standard is also very general. In fact, this court issued an opinion, published opinion on habeas just about a month ago that Judge Murphy authored, Johnson v. Plapper. That was, I believe, on January 9th of this year. And it talks about these – how sweeping the Boykin standard is for pleas. And it's very similar in that sense to Strickland. And so if the standards we're talking about are very broad, very sweeping, that gives state courts room to determine and discern and to decide how counsel should be held to certain standards and how trial courts should be held to certain standards as well. So it's not the – really, the issue and the solution is that the standards are very general here. But Johnson was about knowing involuntary, and Padilla, the immigration case, could suggest that counsel's duties extend beyond what is required to show a knowing involuntary plea. So even if you didn't have a right to know that you couldn't appeal from your plea, I could see a claim that counsel still should, as Judge Stranz suggested, disabuse a client who affirmatively says on the record that I plan to appeal. So what's wrong with the idea – and Padilla might back this up – that counsel's duties extend beyond more than what is required to show a knowing involuntary plea? I think Padilla, as far as I can tell, its treatment since its issuance has sort of been held to its facts because deportation is so unique and such a – I mean in a lot of ways, essentially a direct consequence of the plea. And that's what the district court talked about here, these direct and collateral consequences. And that counsel needs to talk about direct consequences, and that is held to that standard, and so is the trial court, but not for collateral consequences. And even if you could read Padilla to say that deportation is a collateral consequence, there are other – there's another case, and I'm struggling to remember off the top of my head right now. I know I have it in my brief that says deportation is a very unique circumstance because of its immediate and extremely prejudicial consequences. And so I think Padilla can sort of be held to its facts, but even if it wasn't held to its facts, if we say that the standard really is what Thomas says it is here, that counsel must advise a client when they express this confusion, the record here doesn't say that counsel didn't advise him of that or that he didn't just ignore or brush off counsel's advice. And we know that a petitioner under Strickland, it's their duty to establish that record evidence, and that's another thing the district court held Mr. Thomas to hear and said that he didn't provide evidence for his claims here. And so – Does the record disclose there was some discussion – I mean, it's not saying what he discussed with counsel, but isn't there some reference in the record that they did have a discussion? Yes, Judge Bush, and that's precisely where I was just going, that there was a moment during the plea where the trial court's advising Mr. Thomas about his appellate rights. He says, okay, now you understand you don't have an automatic appeal of right. And that's when Mr. Thomas says, oh, wait, that means I can't appeal this case. And the court clarified, well, it means you can apply – you can ask for permission to appeal. And at that point, the record shows that there was a brief discussion between counsel and the client, and after that, he didn't express confusion anymore. He didn't say anything about his appellate rights or – So your position is that he should have by affidavit or otherwise advised the habeas court what that discussion was with his counsel? That would have been at least some evidence, yes. Did he file an affidavit? I've got an affidavit right in front of me that says, prior to entering my no contest plea, Mr. Evans, my lawyer, do not tell me whether I could appeal issues related to the investigation of my case, my rights to a speedy trial, Brady violations, prosecutorial misconduct, and other issues I believe are present. Why wouldn't that – do you know what affidavit – it's like 811, page ID 398. That's some evidence, I would think. Yes, Your Honor. That's right. He did file an affidavit. He did identify those issues. And granted, that is some evidence, but it's also self-serving post hoc evidence, and it's not really substantiated anywhere else. But let's say even if this was the standard that this advice has to be given, the problem is silence in the record too, that during the plea colloquy, there's no – there's this notation that this advice was – or excuse me, this conference was had with counsel. But we know from the Supreme Court that silence can't satisfy the petitioner's burden. And I think a self-serving affidavit, that's kind of a stretch as well, that is going to have a hard time satisfying the burden here that he wasn't given this advice. And I think ultimately all of this circles back to the fact that there's nothing that says this advice has to be given. There are no cases cited by Mr. Thomas, and even the district court struggled to find anything more than I think it was two state cases, one from Ohio, one from Connecticut, that talked about any discussions that counsel must have with their client about this appellate waiver and specifically non-jurisdictional defects. Well, let me ask you then about the Michigan Supreme Court's rule. I know that this was considered under, I think it's 6.302A, which is said to be premised on the constitutional provisions and doesn't – it's People v. Guyton, a Michigan case from 2023. They clearly say that in certain circumstances, a trial court may be required to inform a defendant about facts not explicitly required by MCR 6.302. So isn't that leeway recognized in Michigan about what a requirement of information to a defendant may include? Sure. I think that's right. I mean that's more or less saying that the duties of the trial court are not necessarily equal to the duties of the defense counsel, that defense counsel's duties might rise above the trial court because a lot of this is about what's in the record. And so the trial court's duty is to make sure that there is a record of what the defending is told, but the discussions between counsel and defending are rarely going to be on the record. And so counsel might have some duties to talk to their client about things that wouldn't be otherwise put on the record. But I think we can bring this back to prejudice as well. So even if, let's say, Mr. Thomas can establish deficient performance somehow even under this double deferential standard through ADPA, I think prejudice is still a problem because he says, well, I had all these appeals – all these issues I wanted to appeal. But the standard is that they would have insisted on going to trial but for their trial counsel's allegedly deficient advice. But here, even though he was prepared to trial – to go to trial, then he reneged on that when he heard that his co-defendant was going to testify him. And that was – and at his plea, he was told his appeal would be by leave, not by right. So he had to ask permission. And so he was already told that it wasn't guaranteed that the appellate courts would look at his issues or grant his appeal and analyze those issues. So even knowing that, whether he – Isn't the problem that he could not bring that type of non-jurisdictional claim, period? He couldn't bring it. That's his allegation, sure, that that's the problem. But I don't think legally that's the problem because if he had been told there's no guarantee that the court of appeals is going to take your case, whether non-jurisdictional defects or otherwise. Even if he had, say, jurisdictional defects, the court of appeals wasn't required to take that case, and he knew that. So if he knew that it already wasn't guaranteed that his issues could be taken to the court and that they would take those issues, he still chose to plead guilty anyway. And he says here, too, that I would have insisted on going to trial so that I could appeal these issues. But that's not really the standard. The standard is that you would insist on going to trial because you think you would win at trial. The goal of going to trial is to possibly get acquitted, not to go through the motions of a trial where you are nearly certain that you're going to be convicted just so you can get to an appeal of right. The cases don't say that. The cases talk about prejudice in terms of whether you think you could win, you defending, could win at trial. And here, I think he recognized after his co-defendant agreed to testify against him, he wasn't going to win at trial because his proposed defense for trial, even with the DNA, was consent. And when he found out that his cousin, who was a co-defendant, who was one of the three rapists in this case, was going to testify against him and was going to destroy that consent defense, he knew the jig was up. He knew his best chance was to plead guilty here. And so it didn't matter truly what his issues he wanted to appeal or whether he could appeal non-jurisdictional issues, what his sentencing exposure was. He knew when his co-defendant was going to testify against him that his defense was out the window and so that he wasn't going to win at trial, and he wanted to at least try to get a lower sentence through pleading guilty or no contest in this case. I think, lastly, that brings us to the sentencing exposure. I'm sorry, Judge Moore, if you were. Well, I was just going to ask a preceding question, actually, whether EDPA – well, I think both parties agree EDPA applies here. But if we look through and adopt the Wilson approach and look through the unreasoned appellate decisions to the state trial court decision, what's wrong with the idea that the state trial court's decision was simply and even contrary to Supreme Court precedent because it didn't cite Strickland or seemingly apply the two-pronged test? Well, I think one thing is they didn't need to cite Strickland. Our Supreme Court cases say that. They cite it in our brief that it doesn't – they don't need to cite Strickland. And, in fact, they really don't even need to specifically analyze the two prongs because, for example, I mean time and time again, say the Michigan Court of Appeals, often when they're denying leave to appeal, they'll issue a one-sentence order that says something along the lines of the application for leave to appeal is denied for lack of merit in the grounds presented. And under Wirth v. Bell from this court, I believe it's a 2012 case, that one-sentence order gets full EDPA deference. Well, I would agree with that. But are you suggesting that the state trial court's decision is essentially a Harrington decision, that it's so conclusory, even though it's a couple pages long, that we should just apply Richter to the state trial court decision too? So that is an argument that we made in our brief. That gets closer to a summary order than a full decision. But if I may, I realize I'm out of time. I will say for Wilson, I think something that really is important for Wilson is Justice Gorsuch's dissent there, which talks about how Wilson is essentially a circular route to get back to Richter. And that's because the state court's written decision that you look through to under Wilson, the presumption that that was on the merits or that the higher court adopted that same reasoning can be rebugging in a number of ways. One, through the state's arguments in state court, the state's arguments in federal court, and obvious portions of the state record. And it said that if the written decision from the lower court is unreasonable, then it's – that rebuts the presumption in Wilson that the higher court adopted that reasoning because it was unreasonable. And that just brings us right back to Richter that if you – then you look at what could have supported that higher court's decision because the lower court was unreasonable. And Justice Gorsuch's whole point in his dissent was that brings us all the way back around to the start of that circle. And I think that is an important distinction. And the last thing I'll add is that, really, this court, no matter what, is bound by White v. Clapper, which is what the district court relied on. For all these reasons, Your Honors, we ask that this court affirm. Thank you. Okay. Thank you, Mr. Denna. And that the state is talking about how bad the case looked for Mr. Thomas. It only helps our argument because it just underscores how critically important it would be to preserve those trial court issues. And that's exactly why Mr. Thomas only pled guilty believing that those issues would be preserved so that he could continue to litigate this – Brady and prosecutorial misconduct all on appeal. Second, with – the respondent likened the Padilla to sort of a direct consequence as part of their argument in support in trying to distinguish it from a situation like this. But I would push back and say, what is a more direct consequence than losing your jurisdictional right to appeal when that's a consequence that is directly given as a result of the conviction at the time of the conviction by the trial judge? I mean that's about as direct as a consequence as you were going to get, which again just highlights the importance of why if there's a misunderstanding about what rights a person would have to appeal, why counsel would have a duty to correct those issues. And what we – I would say last is that I think the respondent is reading into the silence that occurred during that plea colloquy too much because we talk about – they mention a post hoc or a self-serving statement at the end. But Mr. Thomas was doing exactly what he should have done, which is after he realized – as soon as he realized the actual consequence, indirect consequence of pleading, he provided an affidavit to the court letting him know what occurred off the record. And so I think that goes against reading into the silence of what occurred during the plea colloquy. For all those reasons, we'd ask you to grant relief to Mr. Thomas by vacating the plea in this case. Okay. Well, thank you very much for your arguments. We'll take the case under submission.